47 F.3d 1170
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re John M. NICHOLS, Lynda D. Nichols, Debtors.
BANK OF BARTLETT, Plaintiff-Appellant,
v.
John M. NICHOLS; Lynda D. Nichols; W. Kline Boyd; Latham
Oates, Trustee, Defendants-Appellees.
 No. 94-5197.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1995.
 
 On Appeal From the United States District Court, for the Western District of Tennessee, No. 93-02345; Robert M. McRae, Jr., Judge.
 W.D.Tenn.
 REVERSED.
 Before: ENGEL, NORRIS, and DAUGHTREY, Circuit Judges.
 ENGEL, Circuit Judge.
 
 
 1
 Plaintiff Bank of Bartlett appeals the district court's affirmation of the bankruptcy court's dismissal of its complaint. In its complaint, the Bank requested that the bankruptcy court deny discharge to John and Lynda Nichols, the debtors, in their Chapter 7 bankruptcy and that the court set aside an allegedly improper transaction. Because some language in the bankruptcy court's opinion suggests a misconstruction of the law, we reverse and remand. Finding that the Bank's appeal is not frivolous, we also deny the Nichols' request for damages as a result of the Bank's appeal.
 
 
 2
 The debtors, Mr. and Mrs. Nichols, were involved in a joint venture which borrowed almost $3 million from the Bank before failing. The Bank sued the joint venturers and reached a settlement agreement with them, including the Nichols, in December of 1989. Independently, late in 1990, John Nichols arranged to borrow different sums of money from a co-worker, Boyd, and from Boyd's corporation. Between November, 1990 and April 1, 1991, Boyd or his corporation advanced $37,000 to Nichols under an oral agreement providing that Nichols could pay only the interest for up to a year, but that if the entire loan was not paid off in the first year, Nichols would then provide collateral for the debt.
 
 
 3
 Despite regular payments by the Nichols, in February, 1991, the Bank filed a second suit to collect the settlement debt from them, and in September, it filed for summary judgment. On December 10, 1991, about a year after Boyd and Nichols' oral agreement, Nichols executed a deed of trust granting Boyd a second mortgage on the Nichols' home and naming Latham Oates as trustee. Nichols had earlier granted liens to Boyd's corporation on the Nichols' two cars. On December 16, 1991, the state court granted the Bank's motion for summary judgment, directing the Bank to submit a final tally of the debt. Allegedly one hour after the court reached its decision, the deed of trust of the second mortgage was recorded, and some time later the liens on the cars were also recorded. On January 6, 1992, the state court entered a final order awarding summary judgment for the Bank for $621,835.44. The Nichols were jointly and severally liable, as were the other joint venturers, for the entire judgment amount.
 
 
 4
 On July 1, 1992, the Nichols filed for Chapter 7 bankruptcy. Their mortgaged home had a fair market value of $100,000, of which nothing would be left after the two mortgages and a $7,500 homestead exemption. The Nichols possessed no other significant assets, so the Bank's claim against them was unsecured and largely unrecoverable. The Bank then filed this complaint in bankruptcy court.
 
 
 5
 The Bank sued under a bankruptcy section providing in relevant part:
 
 
 6
 (a) The court shall grant the debtor a discharge, unless--
 
 
 7
 * * *
 
 
 8
 (2) the debtor, with an intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
 
 
 9
 (A) property of the debtor, within one year before the date of the filing of the petition....
 
 
 10
 11 U.S.C. Sec. 727. The Bank requested that the bankruptcy court deny the Nichols' general discharge and set aside the deed of trust mortgaging the home to Boyd. It is undisputed that the Nichols did transfer an interest in their home to Boyd within one year of filing the bankruptcy petition. Thus, the only question is whether they acted "with an intent to hinder, delay, or defraud" the Bank. The bankruptcy court conducted a trial on the issue and ultimately decided that the Nichols lacked such intent. Accordingly, the court dismissed the complaint. The Bank appealed to the district court, which affirmed, and the Bank appealed again to this court.
 
 
 11
 In bankruptcy, the district court acts as an appellate court, reviewing questions of law de novo and questions of fact for clear error. 28 U.S.C. Sec. 158(a). This court, the second appellate tribunal, applies the same standards of review. 28 U.S.C. Sec. 158(d), F.R.B.P. 8013; In re Martin, 761 F.2d 1163, 1165 (6th Cir.1985).
 
 
 12
 On appeal to this court, the Bank argues again that the bankruptcy court applied an incorrect rule of law. It contends that the bankruptcy court mistakenly believed that it must prove intent to hinder, delay, and defraud the creditor. The Bank emphasizes that it need not prove "fraudulent intent," as the court held it had failed to do, but only intent to hinder or delay. We agree that Sec. 727 is clearly disjunctive, so the Bank must prove only an intent to hinder, or an intent to delay, or an intent to defraud.
 
 
 13
 Unfortunately, some language in the bankruptcy court's opinion does not reflect this disjunction. The opinion begins with the statement, "The issue for judicial determination is whether the eleventh hour prepetition transfer ... was done with the intent to hinder, delay and defraud creditor...." In re Nichols, Case No. 92-27045-D, Adversary No. 92-0909, slip op. at 1 (Bankr.W.D.Tenn. Jan. 15, 1993) ("Bankr.Op."), emphasis added. However, in the discussion, the court properly uses "or" in stating the Bank's burden, then correctly restates the original question: "[T]he seminal question is whether debtors' actions were done in an attempt to hinder, delay, or defraud creditors." Bankr.Op. at 6. The court also uses "or" in discussing two cases, then states that for denial of discharge, the transfer must be "made with fraudulent intent." Bankr.Op. at 7. The opinion then concludes: "the court does not find the requisite fraudulent intent necessary to deny the general discharge." Bankr.Op. at 8. The district court apparently believed that the lower court correctly applied the law to find no "actual intent to hinder, delay or defraud a creditor." In re Nichols, No. 93-2345-4BRO, slip op. at 9 (W.D.Tenn. Dec. 15, 1993). Yet the district court, too, mentions "the requisite fraudulent intent." Dist.Op. at 9. The district court held that the bankruptcy court's factual finding of no "fraudulent intent" was not clear error, and it affirmed the dismissal.
 
 
 14
 We find it difficult, however, to be certain that the bankruptcy court did make the necessary finding of fact--that the Nichols acted with no intent to hinder, to delay, or to defraud the Bank. It is quite possible that the court used the term "fraudulent intent" as an abbreviation for the statutory phrase, and that by that term it meant to include any intent to hinder or delay as well. Nonetheless, the court does not explain what it means by "fraudulent intent." Given the court's misstatement of the law in its introductory statement, we hesitate to interpret the phrase "fraudulent intent" to mean any more than an intent to defraud. As a result, we question whether the bankruptcy court found that the Nichols had no intent to hinder, delay, or defraud the Bank--or whether it found merely that the Nichols had no intent to defraud the Bank.
 
 
 15
 The Bank also argues that whatever the court found, the undisputed facts so strongly suggest fraud or an intent to hinder its claim that any finding of no intent is clearly erroneous. We disagree. While the Bank has made a strong case, the bankruptcy court in its trial was best able to judge the subjective intentions of the parties. We will not second-guess its judgment. F.R.B.P. 8013. The facts could indeed support a finding of an intent to hinder, delay, or defraud the Bank, but they could also support a finding of an intent to protect Boyd--without any intent to hinder, delay, or defraud the Bank. We decline the Bank's invitation to import bankruptcy law's prohibition on preferences from 11 U.S.C. Sec. 547. That section contains several restrictions not present in Sec. 727, under which the Bank sued. Only a bankruptcy trustee may bring suit to avoid a preference, and then only if it occurred within ninety days before the debtor filed for bankruptcy, as this transfer did not. 11 U.S.C. Sec. 547(b). Nor does that section require a denial of discharge as its penalty. To succeed under Sec. 727, the Bank must show more than a preference; it must show an intent by the debtors to hinder, delay, or defraud the Bank. See In re McCall, 76 B.R. 490, 497 (Bankr.E.D.Pa.1987), and cited authorities.
 
 
 16
 We cannot ascertain precisely what the bankruptcy court found, and the district court, acting as an appellate court here, is no better able to determine what the bankruptcy court or the Nichols intended. Therefore we believe that the bankruptcy court should be permitted to clarify its opinion, making additional findings of fact if necessary. Accordingly, we REVERSE the district court's affirmance and REMAND, with directions that the district court should likewise remand the case to the bankruptcy court.